IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROSITA CONTRERAS, | ) |
| Plaintiff, | ) Case No. 05-6240-HO |
| v. | ) ORDER |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff brings this proceeding pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for social security disability benefits. Plaintiff asserts disability beginning March 13, 2002, due to right shoulder injury, carpal tunnel syndrome, and right knee pain. After a hearing, an administrative law judge (ALJ) determined that plaintiff is not disabled.

1 - ORDER

Plaintiff contends the ALJ erred in: (1) failing to discuss whether plaintiff's severe (and non-severe) impairments, in combination, would meet or equal the Listings; (2) rejecting plaintiff's symptom testimony; (3) rejecting the opinion of treating physician, Dr. Richard Edelson; (4) failing to include all of plaintiff's limitations in the residual functional capacity; (5) rejecting lay witness statements; and (6) failing to meet his burden to show plaintiff could work because of the other noted errors.

1.   The Listings

Plaintiff contends that the ALJ found severe impairments of obesity, shoulder joint irritation, and problems associated with surgery in both knees and non-severe impairments of osteoarthritis and carpal tunnel syndrome, but failed to discuss whether these impairments, in combination, would meet or medically equal the Listed impairments.   In plaintiffs opening brief, she fails to identify which listing she meets and why.   In her reply brief, plaintiff identifies Listing 1.02 Part A and the effect of obesity noted in the Listings and cites a physical capacities evaluation.

At step three of the sequential evaluation process, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4. The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person

2 - ORDER

from doing any gainful activity." See 20 C.F.R. § 404.1525. If a claimant meets or equals a listed impairment he will be found disabled at this step without further inquiry. See 20 C.F.R. § 404.1520(d).

To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526.

> Listing 1.02 involves a
>
> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> ....

20 C.F.R. Pt. 404, Subpt. P. App. 1.

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as

3 - ORDER

>having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

20 C.F.R. Pt. 404, Subpt. P. App. 1, Part A, 1.00(B)(2)(b)(1).

>To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P. App. 1, Part A, 1.00(B)(2)(b)(2).

Plaintiff notes a physical capacity assessment:

>Standing stationary and standing moving about are limited to a maximum of 5 minutes at a time and 1 hour per day. Standing tolerance is significantly limited by knee and back pain. Attempts at distraction to prolong standing was unsuccessful.

Tr. 231.

The cited portion of the record sheds little light on plaintiff's ability to ambulate effectively. However, the assessment further notes that

>Walking is accomplished with minimal knee flexion. There is a "stiff-legged" gait that is mediated primarily by hip

4 - ORDER

>    motion. The hips are fixed in flexion to accommodate the
>    hyperlordosis in the low back. This results in low
>    efficiency gait. She is able to walk for 1 minute and 17
>    seconds and the heart rate rose from 72 to 104.

Tr. 231-32.

There appears to be some record support for an extreme limitation on ambulation. However, this evidence does not appear to have been before the ALJ. Accordingly, a remand is necessary so the ALJ can consider whether plaintiff's impairments, in combination, are medially equivalent to Listing 1.02.

### 2. Plaintiff's Credibility

Plaintiff contends that ALJ erred rejecting her subjective complaints regarding limitations. The ALJ discredited plaintiff's complaints because her:

>    treating sources are unanimous in their opinion that
>    claimant is capable of some work.... In January, 2003 the
>    claimant was released to "light duty." Her physician, Dr.
>    Edelson, limited her in February, 2003 to modified
>    sedentary work ... noting in September, 2003 that
>    claimant's obesity accounts for most of her complaints and
>    symptoms.... DDS Evaluators, reviewing claimant's
>    allegations in April, 2003, assessed her as capable of
>    medium exertion work.

Tr. 19.

In rejecting a claimant's testimony, the ALJ must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

5 - ORDER

alleged. All that is required of the claimant is that she produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering. A claimant need not show that the impairments in fact did cause the symptoms. Id. at 1281-82. The claimant need not produce objective medical evidence of the symptoms themselves or their severity. Id. at 1282. Once a claimant produces evidence to meet the Cotton test and there is no evidence of malingering, then the analysis moves to the second stage.

Under the second part of the analysis, the ALJ must analyze the credibility of a claimant's testimony regarding the severity of her symptoms. The ALJ can reject a claimant's symptom testimony only if he makes specific findings, stating clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).

In determining a claimant's credibility the ALJ may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also

    consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284.

The opinions of treating sources cited by the ALJ do not appear to be based on consideration of all of plaintiff's impairments. see, e.g., Tr. 227 (Dr. Edelson cannot comment on limits other than right shoulder); Tr. 119 (Dr. Gerry released her to work without restrictions with regard to her neck and notes Dr. Edelson released her with respect to her shoulder). While Dr. Gerry did note a physical capacities evaluation in indicating sedentary work, the ALJ does not appear to have considered the physical capacity assessment noted above which elucidates problems plaintiff experiences related to her knees, as well as other limitations. Accordingly, a remand is necessary to evaluate plaintiff's testimony in light of this evidence and to gather further information from plaintiff's treating doctors regarding specific limitations rather than general opinions that plaintiff is capable of "some work."

### 3. Dr. Edelson

Plaintiff contends that the ALJ rejected Dr. Edelson's assessment that plaintiff has permanent restrictions of her right upper extremity including no lifting more than 10 pounds, repetitive

7 - ORDER

lifting, or overhead work. However, the ALJ accepted these limitations. Tr. 19, 252.

### 4.  Limitations

Plaintiff contends the ALJ erred by failing to include the limitations noted by Dr. Edelson in the residual functional capacity finding. However, as noted, the ALJ incorporated those limits.[1]

### 5.  Lay Witness Statements

Plaintiff contends that the ALJ erred in rejecting the statement of Amber Villanueva regarding various activities in which she observes plaintiff is unable to engage. The ALJ generally accepted her observations, but found them not helpful on the ultimate question as to whether plaintiff could work. The ALJ did not err in this regard.

Plaintiff contends the Appeals Council erred in failing to consider the statement Salvador Contreras submitted subsequent to the ALJ's decision. It appears the Council did consider it, but, upon remand, the ALJ should take the statement into account.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone

---

[1] Plaintiff's argument is based on semantics such as asserting the ALJ did not accept the restriction of "no" overhead work because he found she should "avoid" overhead lifting.

8 - ORDER

v. Heckler, 761 F.2d 530 (9th Cir. 1985)).  Remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings.  McAllister v. Sullivan, 880 F.2d 1086 (9th Cir. 1989).  Remand for further proceedings is appropriate in this case for the reasons stated above.


                              CONCLUSION

    Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings to address the deficiencies noted above.


    DATED this   15th   day of   May  , 2006.


                                   s/Michael R. Hogan
                              UNITED STATES DISTRICT JUDGE


        9 - ORDER